Paul E. Jackson and Helen A. Jackson v. Commissioner.
Jackson v. Commissioner
Docket No. 50694.
United States Tax Court
T.C. Memo 1955-304; 1955 Tax Ct. Memo LEXIS 34; 14 T.C.M. (CCH) 1175; T.C.M. (RIA) 55304; November 8, 1955
Murray Abrams, Esq., for the petitioner. James E. Markham, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax against petitioners for the years 1948, 1949 and 1950 in the following amounts: 1948
$3,464.50
1949
2,609.96
1950
3,773.20
For the year 1948, the issues presented for our decision are whether respondent erred in determining (A) that the distributive shares of petitioners' incomes from the partnership known as Jackson & Company should be increased by reason of the disallowance of (1) casualty losses in the amount of $3,141.00, (2) demolition expenses in the amount of $3,591.24, (3) "television research" expenses in the amount of $723.06, (4) travel, entertainment *35 and selling expenses in the amount of $2,657.33, and (5) telephone expenses in the amount of $126.86; and (B) that a casualty loss claimed by petitioners in the amount of $8,602.46 as a result of damage to their residence arising from a snow storm should be disallowed. For the year 1949, the issues presented are whether respondent erred (A) in the determination that the distributive share of petitioners' income from Jackson & Company should be increased by reason of his disallowance of (1) casualty losses in the amount of $4,900.00, (2) "television research" expenses in the amount of $870.94, (3) travel and entertainment expenses in the amount of $1,919.24, and (4) telephone expenses in the amount of $319.72; (B) in disallowing a deduction claimed by petitioners for the cost of a moving picture projector, used in petitioners' business, in the amount of $285.00; (C) in disallowing a deduction in the amount of $450.00 claimed for expenses in connection with the operation of a business known as Worth Street Forecast; (D) in disallowing a deduction of $450.00 claimed as expenses in connection with a business known as Worth Advertising Agency, Inc.; and (E) in disallowing the deduction *36 of medical expenses as not being in excess of 5% of petitioners' adjusted gross income. For 1950 the issues presented are whether respondent erred (A) in determining that petitioners' distributive shares of income from Jackson & Company should be increased by reason of his disallowance of (1) casualty losses in the amount of $4,000, (2) telephone expenses in the amount of $434.75, (3) travel and entertainment expenses in the amount of $3,189.93, (4) "television research" expenses in the amount of $154.34; and (5) a short term capital loss in the amount of $8,700.00 claimed on account of the worthlessness of preferred stock of the Worth Advertising Agency, Inc.; (B) in disallowing expenses in the amount of $450.00 in connection with Worth Street Forecast; and (C) in disallowing expenses in the amount of $650.00 in connection with Worth Advertising Agency, Inc. In addition to the score of issues above referred to, others were raised by the pleadings but were abandoned by petitioners at the hearing herein. The only facts stipulated by the parties are that income tax returns were filed by petitioners and the partnership of Jackson and Company for the taxable years, and that some *37 111 checks described in the stipulation were drawn during the taxable years. Findings of Fact We incorporate herein by this reference the stipulation of facts. Petitioners are husband and wife and filed joint Federal income tax returns for the taxable years with the then collector of internal revenue for the second district of New York, with whom Jackson and Company filed partnership returns for the same years. Jackson and Company was a partnership formed by the petitioners for the purpose of carrying on an advertising business and also for the purpose of carrying on some real estate transactions. Paul also owned and published a textile trade publication known as the Worth Street Forecast, and owned and operated a business known as the New York Advertising Art & Photographic Service. He also was an officer of the Worth Advertising Agency, Inc., organized in 1949 and dissolved in 1950, of which Jackson and Company was one of the principal stockholders. Petitioners lived during the taxable years in Tuxedo Park, New York, in a home purchased by Paul in 1935 at a cost of $15,000. The title was held in the name of Helen. After its purchase petitioners made capital improvements prior *38 to 1948 in the approximate sum of $28,000. Jackson and Company owned two parcels of real estate located in Tuxedo Park known as the McKim house and the Keich house. On December 26, 1947, a heavy snow fall began in Tuxedo Park which continued for some time. In January 1948 the temperature fell to and remained many days below freezing as a result of which the snow on the roof was frozen and the gutters on the roof eaves were blocked with ice. When the snow melted next to the house roofs on account of heat from the houses the water could not drain down the gutters and recurring freezing forced it under the roofs and when again melted by the heat of the houses the water came down through the roofs into the ceilings and floors beneath resulting in damage to the houses, against which damage petitioners were not insured. On account of such damages to their residence petitioners sustained a deductible loss in the amount of $5,000. The amounts of losses, if any, sustained and deductible on account of damages to the properties owned by Jackson and Company, known as the McKim and Keich houses, are not proved. In 1946 Paul and other individuals who are not identified by the evidence, purchased *39 for $10,000 a large house located in Tuxedo Park known as the Lorillard property which had been vacant for some years. Pursuant to an understanding existing at the time of its purchase, this property was conveyed to Jackson and Company in the early part of 1947. At the time of the original purchase and later conveyance, it was contemplated by petitioners that this house would be subdivided by them into small apartments, but this project was abandoned as impractical on account of the large cost involved. Petitioners were not able in 1947 to find a tenant for the entire house. The house had fifteen large rooms, including a library room 47 feet long, 22 feet wide and 12 feet high, located in a wing of the house. In order to minimize real estate taxes on this property petitioners, after discussing the matter with local assessment officials, decided to reduce the cubic footage of the house by demolishing the library wing. One reason for the decision to demolish the library was that petitioners felt it unlikely that a prospective tenant or lessee would be interested in having a library of this size. The library wing was, accordingly, demolished in 1947 and an annual tax saving of approximately *40 $700 resulted. At a time when the actual demolition was practically complete but when, as a result of the demolition work already done, "the ground and pipes and utilities [were] in an awful mess", petitioners found a prospective tenant for the house, and in 1948 they expended $3,591.24 for the completion of the demolition to the extent that the remaining portion of the house would be habitable and attractive, for making alterations in the house as suggested by the prospective tenant and for redecorating the house. In connection with the work described in the preceding paragraph there were removed from the library wing of the Lorillard house two valuable mantels and a large amount of antique pine panelling. As a result of the negligent manner in which the mantels were stored, they broke of their own weight at some time in 1947, 1948 or 1949. Petitioners discovered that they were broken in 1949. In 1950 the pine panelling was burnt by persons in charge of their storage in the mistaken belief that it was ordinary fire wood. In 1947 a crystal chandelier hanging in the hall of the Lorillard house was broken by workmen. In 1947 or 1948 four silver sconces were removed from the wall *41 of the dining room and were trampled on by workmen and thus damaged. Petitioners' cost bases with regard to the articles above described have not been proved. Jackson and Company purchased a large television set in 1948. As payments on its purchase price and servicing charges, Jackson and Company expended in 1948, 1949 and 1950 the respective amounts of $723.06, $870.94 and $154.34. The television set was used by petitioners partly for business purposes in observing and monitoring programs and televised advertisements, and partly for the personal entertainment of petitioners' family. One-half of the amounts expended on account of this television set during each of the taxable years constituted an ordinary and necessary business expense of petitioners for Jackson and Company. During the taxable years Paul was a member of the Tuxedo Club where he entertained clients, prospective clients and business associates of Jackson and Company. It was also used by Helen and petitioners' children. During 1948, 1949 and 1950 Jackson and Company paid Paul's bills at the Tuxedo Club in the respective amounts of $1,234.66, $781.64 and $1,363.45. One-half of these amounts constitute ordinary and *42 necessary business expenses. In 1948 and 1949 the titles to two automobiles were in the name of Jackson and Company. One was kept at petitioners' home and one in a neighborhood garage. The first was primarily for personal use and the other primarily for business use. In 1950 a third car was acquired by Jackson and Company which was used exclusively for business purposes. Of the amounts spent on account of automobiles during 1948 and 1949 $400 and $300, respectively, constituted ordinary and necessary business expenses. Of the amount spent on account of automobiles in 1950 $1,000 constituted ordinary and necessary business expenses. During the taxable years petitioners deducted as business expenses all of the toll charges for telephone calls made at their residence. Some calls were made for business purposes and others were made for personal reasons. No basis of allocation is disclosed by the evidence, Paul testifying that there was none. In 1949 Paul, doing business as New York Advertising Art & Photographic Service, purchased a moving picture projector for $283.00. This was a machine used by advertising agencies and designed especially for the exhibition of spot television films *43 and continuous display films. It was never used by petitioners for their personal enjoyment but was purchased and used by petitioners for purely business purposes. In each of the years 1949 and 1950 Paul spent $450 for entertainment and travel in connection with securing information to incorporate into a textile trade publication issued by him in the business carried on by him in the name of Worth Street Forecast. Of these amounts $300 constituted ordinary and necessary business expenses. In 1949 and 1950 Paul expended certain sums for travel and entertainment expenses in connection with activities carried on by him on behalf of Worth Advertising Agency, Inc., of which he was an officer. He was fully reimbursed for these expenditures in each of the years by Worth Advertising Agency, Inc. Jackson and Company purchased 400 shares of the proposed stock of Worth Advertising Agency, Inc., in October of 1949, and Paul became one of its principal officers. In 1950 it became apparent that the corporation was in financial trouble and the directors decided that its business should cease, its assets be liquidated, its creditors be paid, and the remainder of its funds be distributed to the *44 shareholders. All this was done by March 7, 1950, with the exception of the collection of a few doubtful accounts and the realization of a questionable chose in action. On March 7, 1950, Jackson and Company received a distribution in liquidation on its preferred stock of $1,300. The corporation was dissolved in 1950. In 1951 Jackson and Company received an additional sum of approximately $500 from the collection of the doubtful accounts of the corporation outstanding at the time of its dissolution and petitioners reported this amount as ordinary income in 1951. In a later year the chose in action was compromised and Jackson and Company received from this source $200 or $300. At the time of the dissolution of the corporation in 1950 the outstanding preferred stock of the corporation held by Jackson and Company in the amount of $8,700 became worthless. Opinion KERN, Judge: Most of the issues involved in this proceeding are factual and their disposition has been adequately indicated in our findings. We have carefully considered all of the evidence bearing on these issues in reaching the conclusions stated. To set out in this opinion all of the evidentiary facts established, or claimed *45 by the parties to be established, by the record before us, and to discuss them in extenso, is, in our opinion, unnecessary. However, our conclusions on certain issues merit some words of explanation. With regard to the casualty to petitioners' residence, the original cost was established by the evidence and Paul testified that the value of the property immediately after the damage was sustained was greatly less than the value prior to the damage. With regard to exact months, his testimony was unsatisfactory because of his lack of expert knowledge in real estate values, the lack of information concerning contemporary real estate transactions in Tuxedo Park, and because his sole reference to a criterion of value was to assessed valuations of real estate, and, on cross-examination, it appeared that the assessed valuation of this property was the same in all of the taxable years. However, we are satisfied that there was a decrease in the market value of this property as a result of the damage sustained from the casualty here involved. As a measure of that decrease we have taken the approximate amount of the cost of repairs actually made to the property. . *46 With regard to the Keich house and the McKim house there is no evidence as to their bases for gain or loss, no evidence as to a decrease in market value resulting from the damages caused by the casualty here involved and no evidence as to amounts expended in repairs. Consequently we have concluded that the amounts of losses, if any, sustained and deductible on account of damages to these properties, have not been proved. With regard to the deduction claimed on account of demolition expenses in connection with the Lorillard property, we have no evidence and can make no finding as to the unrecovered basis of the part of the house which was destroyed, and consequently, no deduction on account of such demolition could be allowed even on the assumption that such a loss was deductible under the facts here present pursuant to Regulations 111, Section 29.23(e)-2. . Moreover, the evidence indicates that the expenditures involved in this issue were incurred for three purposes, (1) to finish the demolition work already well toward completion, (2) to make alterations in the house, and (3) to redecorate it. Expenditures made for alterations would be capital *47 in nature and not deductible, and, as we have pointed out, any loss due to the voluntary removal of the library is not deductible because of petitioners' failure to prove the unrecovered basis of the part of the house destroyed. While that part of the expenditures made for redecorating might be deductible, there is no evidence by which we can make an allocation of the expenditures and approximate the amount expended for this purpose. With regard to the losses claimed on account of the damage to or destruction of the mantels, sconces and panelling, there is likewise a failure of proof as to petitioners' bases for gain or loss. There is also no evidence that the damage to the mantels occurred during any of the taxable years, and no evidence as to the value of the sconces after they were damaged. Decision will be entered under Rule 50.